# IN THE COURT OF APPEALS OF IOWA

No. 19-0757
Filed January 9, 2020

**IN THE MATTER OF K.S.,**
**Alleged to Be Seriously Mentally Impaired,**

**K.S.,**
  Respondent-Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Kevin McKeever, Judge.

A prison inmate appeals the district court order finding he is seriously mentally impaired and requires treatment. **AFFIRMED.**

Jonathon Muñoz of Nidey, Erdahl, Fisher, Pilkington & Meier PLC, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

The Iowa Department of Corrections (DOC) successfully sought an involuntary hospitalization order against K.S. after he destroyed property and fought with another offender. On appeal, K.S. contends the record does not support the district court's finding he would be likely to pose a danger to himself or others if allowed to remain at liberty (within the prison system) without treatment. *See* Iowa Code § 229.1(20) (2019). Because the State offered clear and convincing evidence K.S. suffered from a serious mental impairment, we affirm the involuntary hospitalization order.

## I. Facts and Prior Proceedings

K.S. acknowledges when he was civilly committed in 2015, doctors diagnosed him as having schizophrenia. He complains "they shot me up with so much Haldol and Seroquel that I was drooling on myself when I was in jail." K.S. claims he "got [himself] off of their psychosis medications" and he has been "fine ever since."

The DOC staff beg to differ. Psychiatrist Gary Keller reviewed K.S.'s mental-health status when he arrived at the reception center at the Iowa Medical Classification Center (Oakdale) in April 2016. K.S. was starting a sixteen-year sentence on his convictions for homicide by vehicle and possession of marijuana. Because K.S. initially did well on medication, the DOC transferred him to the minimum security correctional facility at Mount Pleasant. In December 2018, K.S. told staff there his mind was "running wild," and other offenders noted K.S. was talking "crazy stuff." The staff reported K.S. quit all his medication except citalopram, which is used to treat depression.

In January 2019, other offenders grew angry with K.S. for "messing with the antennas on the televisions disrupting viewing." On January 28, he tore down one of the antennas, which lead to increased tension on the unit. Two days later, K.S. pulled down another TV antenna and ended up in a physical altercation with another offender. In light of the downward spiral in his mental health, the DOC transferred K.S. back to Oakdale. Upon his return, K.S. told the medical staff he was not interested in taking any different medications. In his examination, Dr. Keller found K.S. to be delusional and lacking insight into the need to stabilize his psychosis. Dr. Keller filed a report in February 2019 finding K.S. was likely to physically injure himself or others if not involuntarily hospitalized for treatment purposes. Dr. Keller testified K.S. continued to be "irritable and unfocused" when he did not take appropriate medications. Dr. Keller also described K.S. as "argumentative and uncooperative" with DOC staff.

Both the judicial hospital referee and the district court accepted Dr. Keller's findings. K.S. now appeals from the district court's order finding he is seriously mentally impaired.[1]

## II.     Scope and Standard of Review

We review challenges to the sufficiency of the evidence supporting civil commitment proceedings for legal error. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa

---

[1] The State challenges the timeliness of K.S.'s appeal. K.S. filed his notice of appeal on April 29, 2019, from a March 28, 2019 order. The 30-day deadline fell on Saturday, April 27, which means the notice of appeal was due on the following Monday, April 29. *See* Iowa Code § 4.1(34); Iowa R. Elec. P. 16.309(1). Thus, the appeal was timely.

2013). Here, the State must prove its claims by clear and convincing evidence. *See* Iowa Code § 229.13(1); *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *J.P.*, 574 N.W.2d at 342 (quoting *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995)). If supported by clear and convincing evidence, the district court's factual findings compel our outcome. *See id.*

### III.    Analysis

To involuntarily hospitalize K.S., the State was required to prove he had a "serious mental impairment." *See* Iowa Code §§ 229.1(20), 229.6(2)(a)(2), 229.13(1). A "serious mental impairment" means:

> [T]he condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness . . . [i]s likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

*Id.* § 229.1(20)(a). In this appeal, K.S. does not contest that he suffers from a mental illness. But he does challenge the State's proof that he lacked judgmental capacity and that he was likely to physically injure himself or others if allowed to remain at liberty without treatment.

### A.    Lack of Judgmental Capacity

This element requires the State to prove K.S. "is unable, because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or not." *In re Mohr,* 383 N.W.2d 539, 541 (Iowa 1986). K.S. contends his resistance to the medication regime recommended by Dr. Keller

is rational because of the side effects he suffered on his previous antipsychotic prescriptions.

Contrary to K.S.'s contention, the record supports the State's position that K.S. lacked the capacity to make a rational decision about his treatment. Dr. Keller testified that after being a "functional person" on medication, when K.S. denied he was suffering from a mental illness and refused medications, "he declined to the point he was fighting with other offenders." Dr. Keller praised K.S. as "a good worker" who "never had any issues with people" when he was taking appropriate medications. But without them, Dr. Keller saw "a total change in [K.S.'s] demeanor." K.S. had "noticeably declined in his functioning" since moving to Mount Pleasant, as Dr. Keller noted during a disjointed and nonsensical conversion. Dr. Keller recommended K.S. take a new long-lasting injectable treatment for his schizophrenia. We find Dr. Keller's chronicling of the consequences of K.S.'s noncompliance is sufficient to show a lack of judgmental capacity. *See In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010).

### B. Dangerousness

We next turn to the endangerment component. To decide if the evidence satisfies this component, we must exercise some "predictive judgment" based on "prior manifestations," but mainly we focus on likely future conduct. *See Mohr*, 383 N.W.2d at 542. "Evidence to support that judgment must come in the form of a 'recent overt act, attempt or threat.'" *In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988) (quoting *Stamus v. Leonhardt*, 414 F. Supp. 439, 451 (S.D. Iowa 1976)). "[A]n 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others

that is likely to result in physical injury." *Id.* at 378. It is not enough to highlight bizarre or "socially unacceptable" behavior. *Id.* at 379.

K.S. argues Dr. Keller's description of his "irritability" and "change in demeanor" falls short of meeting the endangerment element. We reject that argument because Dr. Keller offered more concrete examples of recent overt acts. For instance, K.S. engaged in what DOC staff characterized as "bizarre behavior" by "messing with" television antennas in a common room, which riled other offenders. That disruption led to a physical altercation with another inmate. True, K.S. claimed the other offender punched him first and he was defending himself. But the district court was entitled to reject that view and credit the psychiatrist's opinion that the incident was emblematic of the risk posed by K.S.'s untreated schizophrenia.

Because the State offered clear and convincing evidence that K.S. suffered from a "serious mental impairment" within the meaning of chapter 229, we affirm the involuntary hospitalization order.

**AFFIRMED.**